**Tw**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL CASE NO. 3:18-cv-00638-MR**

| | |
|---|---|
| SANDRA I. MILLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ANDREW SAUL, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Commissioner's Motion for Summary Judgment [Doc. 13].

**I.   BACKGROUND**

On July 11, 2014, Sandra Millan (the "Plaintiff") filed an application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of July 4, 2014. [Transcript ("T.") at 204-11]. On the same date, the Plaintiff also applied for supplemental security income payments under Title XVI, again alleging an onset date of July 4, 2014. [Id. at 212-17]. Her claims were initially denied on January 14, 2015, and upon reconsideration on July 23, 2015. [Id. at 134, 142, 152]. On

the Plaintiff's request, a hearing was held on May 18, 2017 before an Administrative Law Judge ("ALJ"). [Id. at 30-50]. On October 3, 2017, the ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since July 4, 2014. [Id. at 24]. On October 2, 2018, the Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support

2

a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017

3

WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing <u>Radford</u>, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio v. Colvin</u>, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. <u>Id.</u>

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. <u>Id.</u> (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant

does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age,

5

education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 4, 2014. [T. at 14]. At step two, the ALJ found that the Plaintiff has the following severe impairments: hypertension, obesity, impairment of the knees, mood disorder, and anxiety disorder. [Id. at 15]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 15-17]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb, balance and stoop. The claimant can occasionally kneel, crouch, and crawl. The

6

>     claimant is capable of simple, routine, and repetitive tasks for two-hour intervals throughout the day for the duration of the workday. The claimant can handle no more than occasional interaction with the public or coworkers. The claimant requires a stable work environment without frequent changes. The claimant is restricted from concentrated exposure to hazards such as moving machinery or unprotected heights. The claimant must have a non-production rate pace.

[Id. at 17].

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. [Id. at 21-22]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including ticket printer, (Dictionary of Occupational Titles ("DOT") number 652.685-094), order caller (DOT number 209.667-014), and work ticket distributor (DOT number 221.667-010). [Id. at 23]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from July 4, 2014, the date the application was filed, through October 13, 2017, the date of the decision. [Id. at 24].

## V. DISCUSSION[1]

The Plaintiff presents three assignments of error. First, the Plaintiff argues that the ALJ erred by improperly weighing the opinions given by Mr. Jeffrey Lorence, M.A. ("Mr. Lorence"). [Doc. 12 at 6]. Second, the Plaintiff argues that the ALJ erred by failing to provide specific reasons for the weight he gave the evidence. [Id. at 17]. Third, the Plaintiff argues that the ALJ erred by failing to resolve an apparent conflict between the testimony of the vocational expert ("VE") and the DOT. [Id. at 18].

### A. Failure to Properly Weigh the Evidence

As her first assignment of error, the Plaintiff argues that the ALJ improperly weighed Mr. Lorence's medical opinion. [Id.].

In making disability determinations, an ALJ must consider all medical opinions of record, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); SSR 06-03p (The ALJ must "consider all of the available evidence in the individual's case

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

record in every case.").² When evaluating and weighing medical opinions, the ALJ is to consider several factors such as (1) the examining relationship, (2) the treatment relationship, including the length of the relationship and the frequency of examination and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416(c)(1)-(6). The ALJ must always give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2p. Generally, more weight will be given to an opinion of a medical source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c). More weight will generally be given to opinions from a claimant's treating sources than from sources rendering an opinion based upon a single or limited examination of a claimant. Id.

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The ALJ must provide a clear explanation for doing so and "build an accurate and logical bridge from the evidence to his conclusion" that the

---

² SSR 06-03p was rescinded effective March 27, 2017 for claims filed on or after that date. See 82 Fed. Reg. 5,844 (2017). The Plaintiff filed her concurrent claims in July 2014, so SSR 06-03p and related regulations still apply to her disability determination.

opinion was not credible. Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

    Here, the ALJ discussed several issues with Mr. Lorence's opinion and only afforded it "partial weight." [T. at 21]. The ALJ first noted that the Plaintiff demonstrated poor effort during Mr. Lorence's examination, including instances where she failed to respond to certain questions. [Id.]. Despite the Plaintiff's lack of effort, the ALJ pointed out that Mr. Lorence did not conduct any tests to rule out malingering. [Id.]. The ALJ also noted that Mr. Lorence's examination was inconsistent with clinical findings in the record from the period at issue, which showed that the Plaintiff's cognitive functioning was in the normal range. [Id.]. Finally, the ALJ highlighted that Mr. Lorence only examined the Plaintiff once. [Id.]. Based on that evidence, the ALJ found that the extent of the Plaintiff's "symptoms may not be as severe as noted by [Mr. Lorence]." [Id.].

When evaluating and weighing Mr. Lorence's opinion, the ALJ properly focused on the relevant factors listed in the regulations. See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416(c)(1)-(6). Applying the factors to the evidence cited gave the ALJ "good reasons" to give Mr. Lorence's opinion partial weight. SSR 96-2p. As such, the Plaintiff's first assignment of error is without merit.[3]

## B. Failure to Build an Accurate and Logical Bridge

As her second assignment of error, the Plaintiff argues that the ALJ only provided a vague reference to unidentified evidence to explain his reasons for discounting the Plaintiff's symptoms and thus failed to form a logical bridge from the evidence to his conclusion. [Doc. 12 at 17].

It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). That bridge should include "'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements

---

[3] The Plaintiff argues that "[a]n ALJ does not provide legally sufficient 'reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those opinions and supports his ultimate opinion with his own observation." [Doc. 12 at 10] (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The case the Plaintiff cites is from outside this circuit and therefore is not controlling in this case. Further, the Fourth Circuit does not appear to have adopted that principle. See Bailey v. Berryhill, No. 4:17-CV-32-FL, 2018 WL 3298078, at *13 (E.D.N.C. Jan. 10, 2018), report and recommendation adopted, No. 4:17-CV-32-FL, 2018 WL 1410414 (E.D.N.C. Mar. 21, 2018) (stating that "the Fourth Circuit does not appear to have adopted the principle stated" in Ryan). As such, the Court declines to adopt the principle the Plaintiff advances.

to the record evidence.'" Id. (quoting Radford, 734 F.3d at 295). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills, 2017 WL 957542, at *4 (citation omitted).

The ALJ found that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record as a whole. [T. at 19]. To support that conclusion, the ALJ discussed the Plaintiff's statements regarding her mental and physical impairments and the relevant regulatory factors including the Plaintiff's daily activities, subjective reports, medical opinions, and treatment history. [Id. at 16-21].

The ALJ acknowledged that the Plaintiff's physical impairments included knee pain that was exacerbated by obesity as well as intermittent back pain. [Id. at 18-19]. Specifically, the ALJ discussed objective medical evidence showing degenerative changes and meniscal tearing in the knee. [Id. at 18-19]. The ALJ noted that the Plaintiff's medical provider indicated that the Plaintiff's obesity was likely contributing to her knee pain. [Id. at 18].

The ALJ, however, mentioned that the Plaintiff was able to exercise a few times a week, albeit sometimes with swelling and pain in her knee. [Id.

12

at 18]. The ALJ also noted that the treating physicians reported that the Plaintiff's gait was intact and there were no signs of joint instability. [Id.]. The ALJ also mentioned that the Plaintiff still could perform some household chores despite her physical impairments. [Id.].

The Plaintiff underwent arthroscopic surgery in October 2015 to address her knee symptoms and increase her physical functioning. [Id. at 19]. Following the surgery, the ALJ noted that the Plaintiff was able to walk and lose weight, although she reported elsewhere that her knee and obesity issues still affected her ability to work by making it difficult to sit. [Id.]. While the ALJ mentioned that although the Plaintiff continued to report some knee pain after her surgery, she did not seek any significant treatment. [Id.].

Regarding the Plaintiff's mental impairments, the ALJ acknowledged that the Plaintiff had depression, panic attacks, and anxiety. [Id. at 15-21]. The ALJ noted that the Plaintiff reestablished mental health treatment three months after the alleged onset date. [Id. at 18]. The ALJ noted that the Plaintiff did well when she was on her medication regimen and was attending therapy. [Id. at 19]. The ALJ noted that the Plaintiff consistently reported that therapy was helpful. [Id.]. The ALJ also mentioned that the Plaintiff's depression increased when she ran out of medication. [Id.]. Despite the therapy and medication, the Plaintiff still experienced crying episodes. [Id.].

Regarding the Plaintiff's treatment history, the ALJ noted that the Plaintiff's treatment records around the alleged onset date were sparse although she sought steady treatment for various impairments prior to that date. [Id. at 18]. Nevertheless, the ALJ considered the Plaintiff's relocation as a possible explanation for her lack of treatment and the available evidence when evaluating her symptoms. [Id. at 18].

The evidence discussed by the ALJ supports his finding that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence of record as a whole [T. at 19]. For instance, the ALJ also discussed the Plaintiff's response to treatment and therapy. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that a symptom that can be reasonably controlled by medication or treatment is not disabling). The ALJ also discussed the Plaintiff's daily activities including her ability to exercise, walk, and perform household chores. SSR 16-3p (The regulatory factors for evaluating a claimant's symptoms include their daily activities). Finally, the ALJ discussed the Plaintiff's treatment history, which shows sparse treatment around her alleged onset date. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (finding the inconsistency between allegations and treatment sought is probative). By doing so, the ALJ properly evaluated the evidence

and built an accurate and logical bridge between that evidence and his conclusion that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence. As such, the Plaintiff's second assignment of error is without merit.

    **C.    Failure to Resolve Apparent Conflict**

As her third assignment of error, the Plaintiff argues that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the DOT. [Doc. 12 at 18-20]. According to the Plaintiff, an apparent conflict exists between the Plaintiff's RFC, which limits her to performing "simple, routine, and repetitive tasks" [T. at 17], and the VE's testimony that the Plaintiff could perform work requiring a DOT Reasoning Level of 2 as a ticket printer, order caller, or and work ticket distributor. [Id. at 23]; see also DICOT 652.685-094 (G.P.O.), 1991 WL 685764; DICOT 209.667-014 (G.P.O.), 1991 WL 671807; DICOT 221.667-010 (G.P.O.), 1991 WL 672062. Reasoning Level 2 jobs require the ability to "carry out detailed but uninvolved written or oral instructions." DOT, Appendix C: Components of the Definition Trailer, Section III. General Educational Development (GED), 1991 WL 688702.

SSR 00-4p requires the ALJ to resolve any actual or apparent conflicts between the VE's testimony and the DOT before relying on that testimony to

15

support a determination or decision about whether a claimant is disabled. Pearson v. Colvin, 810 F.3d 204, 207-8 (4th Cir. 2015) (citing SSR 00-4p). In Thomas v. Berryhill, the Fourth Circuit held that an apparent conflict existed "between a limitation to 'short, simple instructions" and jobs requiring Reasoning Level 2 that would require a claimant to follow "detailed but uninvolved . . . instructions.'" 916 F.3d 307, 313-14 (4th Cir. 2019), as amended (Feb. 22, 2019). The Court in Thomas remanded the case for so the ALJ could identify and resolve the apparent conflict. Id.

A limitation to simple, routine, and repetitive tasks, however, is different from the limitation to short, simple instructions that was relevant in Thomas. See Lawrence v. Saul, No. 18-1112, 2019 WL 5445048, at *3 (4th Cir. Oct. 24, 2019). "The first limitation accounts for a claimant's ability to perform certain job tasks while the second limitation accounts for a claimant's ability to comprehend job tasks." Lambert v. Berryhill, No. 518CV00028RJCDSC, 2019 WL 1354038, at *5 (W.D.N.C. Mar. 26, 2019). As such, a plaintiff's RFC limiting her to simple, routine, repetitive tasks does not conflict with the DOT definition of Level 2 reasoning. Lawrence, 2019 WL 5445048, at *3.

Here, the Plaintiff's RFC imposes no restriction limitation on her ability to follow instructions. Instead, the Plaintiff's RFC limits her to jobs involving "simple, routine, and repetitive tasks." [T. at 20]. There is no apparent

conflict between that RFC and Reasoning Level 2 positions requiring the Plaintiff to carry out detailed but uninvolved written or oral instructions. Lawrence, 2019 WL 5445048, at *3. As such, the ALJ had no apparent conflict to resolve and the Plaintiff's third assignment of error is without merit.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **DENIED**, and that the Commissioner's Motion for Summary Judgment [Doc. 13] is **GRANTED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **AFFIRMED** and the case is hereby **DISMISSED**. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 11, 2019

Martin Reidinger
United States District Judge